UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

KIMBERLY ESPARZA,

    Plaintiff,

  v.

UNIVERSITY MEDICAL CENTER MANGEMENT CORPORATION, LOUISIANA CHILDREN'S MEDICAL CENTER, and BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,

    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

**COMPLAINT**

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

**Bizer & DeReus**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

-2-

**PRELIMINARY STATEMENT**

1. Plaintiff Kimberly Esparza is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her most effective means of communication. During her medical treatment at the University Medical Center, defendants discriminated against her by failing and/or refusing to provide auxiliary aids and services necessary to ensure effective communication with her. As a result, Ms. Esparza had difficulty understanding her medical condition and/or the treatment she received.

2. Due to physical, environmental, and pedagogical factors, many deaf individuals, including Ms. Esparza, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, defendants often forced Ms. Esparza to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating her disability through qualified ASL interpreters.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. In any event, Ms. Esparza is not adept at lip reading.

4. Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user

has a visual impairment, is in a lot of pain, or cannot achieve the proper posture to view the screen); when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, defendants utilized a nonfunctioning VRI, or a VRI when it was not appropriate to do so, instead of properly accommodating Ms. Esparza's disability.

5. Based on Ms. Esparza's allegations herein, it is evident that defendants have failed to implement policies and to train their employees regarding the civil rights and communication needs of deaf individuals. Ms. Esparza brings this action to compel defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from defendants' health care services.

6. Ms. Esparza brings this lawsuit to compel defendants to cease their unlawful discriminatory practices and to implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from defendants' health care services.  Ms. Esparza seeks declaratory and equitable relief, monetary damages, nominal damages, and attorneys' fees to redress defendants' unlawful discrimination on the basis of disability in violation Titles II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 791; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 USC § 18116; the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq.

## THE PARTIES

7. Plaintiff KIMBERLY ESPARZA (hereinafter "Ms. Esparza") brings this action and is an individual residing in Jefferson Parish, Louisiana. Ms. Esparza is a profoundly deaf individual who

primarily communicates in American Sign Language, and she is an individual with a disability within the meaning of federal antidiscrimination laws.

8.      Defendant UNIVERSITY MEDICAL CENTER MANGEMENT CORPORATION ("UMCMC") is a Louisiana non-profit corporation doing business in Orleans Parish. Defendant UMCMC leases and/or operates University Medical Center New Orleans ("UMCNO"), a full-service hospital located at 2000 Canal Street, New Orleans, Louisiana 70112. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 1557 of the ACA, Section 504 of the RA, and the Louisiana Commission on Human Rights.

9.      Defendant LOUISIANA CHILDREN'S MEDICAL CENTER ("LCMC") is a Louisiana non-profit corporation with its principal place of business at 200 Henry Clay Avenue, New Orleans, Louisiana 70118. Defendant LCMC is the sole member of Defendant UMCMC which leases and/or operates University Medical Center New Orleans ("UMCNO"), a full-service hospital located at 2000 Canal Street, New Orleans, Louisiana 70112. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and is subject to the requirements of Title III of the ADA, Section 1557 of the ACA, Section 504 of the RA, and the Louisiana Commission on Human Rights.

10.     Defendant BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ("LSU") is a constitutionally empowered board established by Article 8, Section 7 of the Louisiana Constitution and is thus a public entity.  Defendant LSU owns University Medical Center New Orleans ("UMCNO"), a full-service hospital located at 2000 Canal Street, New Orleans, Louisiana 70112, which it leases to UMCMC to operate. As a public entity, Defendant is subject to the requirements of Title II of the ADA, Section 1557 of the ACA, and Section

504 of the RA.

## JURISDICTION & VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the defendants reside within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the defendants have sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

13. Plaintiff Kimberly Esparza is profoundly deaf and communicates primarily in American Sign Language (ASL).

14. Plaintiff Kimberly Esparza has limited proficiency in written English, and requires auxiliary aids and services to communicate effectively in a medical setting.

15. Ms. Esparza receives her primarily medical care at UMCNO.

16. In October of 2016, Ms. Esparza broke her right arm and received medical care at UMCNO. Ms. Esparza went to UMCNO on approximately ten (10) occasions for treatment associated with her broken arm. During this time, UMCNO consistently failed to provide Ms. Esparza with a qualified sign language interpreter.

17. Instead of providing Ms. Esparza with a qualified sign language interpreter, Defendants insisted that Ms. Esparza utilize a VRI. Due to time it would frequently take for the hospital staff/employees to set up the VRI machine, Ms. Esparza was not able to effectively communicate using this method. On several occasions, it took defendants several hours to set up the VRI equipment. In one instance, Ms. Esparza was forced to wait for approximately three hours for the VRI machine to be

brought out and set up.

18.     Further, under the circumstances a using a laptop VRI was not appropriate because Ms. Esparza had limited ability sign with both hands as a result of her injury. Accordingly, the only way effective communication could occur is through a live, in-person sign language interpreter who could see Ms. Esparza's full body language.

19.     Accordingly, and to ensure prompt and immediate medical care, Ms. Esparza was forced to utilize her mother as a sign language interpreter.

20.     Ms. Esparza did not want to utilize her mother as a sign language interpreter because her mother is not a qualified sign language interpreter. Further, Ms. Esparza is embarrassed about having to share sensitive medical information and treatment options with her mother. Ms. Esparza is entitled to private medical care before a qualified sign language interpreter.

21.     As a result of the lack of a qualified sign language interpreter, Ms. Esparza was unable to understand the nature, scope, or consequence of her broken arm. As a result of the lack of a qualified sign language interpreter, Ms. Esparza had difficulty asking questions about her treatment options or the side effects of the various available treatment options.

22.     Due to the lack of a qualified and independent sign language interpreter, Ms. Esparza is unaware of whether there are any long-term impacts of her broken arm or whether there are any activities she should avoid.

23.     In January of 2017, Ms. Esparza went to UMCNO to receive dental treatment. Defendants did not provide Ms. Esparza with a qualified sign language interpreter. Instead, defendants relied upon Ms. Esparza's boyfriend Matt to read lips. However, Matt is also Deaf and, therefore, this method of communication was obviously not effective for Ms. Esparza.

24.     [redacted]

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████

25.     During this dental treatment, Ms. Esparza was prescribed antibiotics and mouthwash. Due to the lack of a sign language interpreter, Ms. Esparza was unable to ask questions about the side effects of these medications, about the duration they should be taken, and whether there were any possible interactions she should be aware of.

26.     ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████.

27.     ████████████████████████████████████████████████████████

████ During that visit, Ms. Esparza explicitly requested that an in-person, qualified sign language interpreter be provided. Ms. Esparza explained to an employee/agent of defendants that the VRI utilized by defendants was heavily pixilated. Due to the pixilated nature of the screen, the signs were difficult for Mr. Esparza to see and understand. According, this use of a VRI machine did not provide Ms. Esparza effective communication.

28.     In response to Ms. Esparza's request for an in-person sign language interpreter, an employee/agent of ██████████████████████████████ stated to Ms. Esparza that the "hospital will not pay for that."

29.     ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████.

30.     Upon arriving at the UMCNO ██████████████████, the following conversation

occurred, through the exchange of written notes, between Ms. Esparza and an employee/agent of defendants:

| | | |
|---|---|---|
| Ms. Esparza: | "Is interpreter coming? I already told you last week to get real person an interpreter, am I right?" |
| UMCNO: | "I told you last week we have to use machine I am not allowed to call outside person" |
| Ms. Esparza: | "Why not get real person to get interpreter, I dislike machine and waste my time for nothing" |
| UMCNO: | "The hospital will not pay for that." |
| Ms. Esparza: | "My mom is interpreter she cant with me all the time she had to work" |

31. As this conversation indicates, Ms. Esparza clearly needed the accommodation of an in-person sign language interpreter because the VRI was ineffective. The only response of UMCNO was that "The hospital will not pay for that."

32. No sign language interpreter was provided to Ms. Esparza.

33. ███████████████████████████████████████████████████████████████████████████.

34. During the March 21, 2017 conference, defendants provided Ms. Esparza with a detailed, four-page medical document that contains information on "Patient Education", a "Consumer Use and Disclaimer", and a "General Education" section.

35. ███████████████████████████████████████████████████████████████████████████ ███████ None of this information was translated for Ms. Esparza, despite her low level of understanding written English.

36. Ms. Esparza has little to no ability to read written English that contains medical terminology.

37. A similarly situated hearing person with limited reading abilities or understanding of

medical terminology could ask defendants for clarification for information on the words, statements, warnings, and information contained in the detailed four-page medical document. Due to the lack of qualified sign language interpreter, Ms. Esparza was not afforded the opportunity to communicate with defendants as to the contents of the four-page medical document.

38. ████████████████████████████████████████████████████████████████

39. During the March 28, 2017 visit, defendants provided Ms. Esparza with a seven pages of detailed medical documents in advance of an appointment scheduled for April 11, 2017. This document contains complex and information medical information such as "Patient Instructions," things the patient "needs to know or do while I take this drug?" and a section in bold and capitalized called "WARNING/CAUTION."

40. Despite the clear importance of this information – including the warnings about "very bad and sometimes deadly side effects when taking a drug" – defendants did not accommodate Ms. Esparza or help her understand the information contained in the documents.

41. A similarly situated hearing person with limited reading abilities or knowledge of medical terminology could have asked defendants for clarification on the words, statements, warnings, and information contained in the detailed, seven-page medical document. Due to the lack of qualified sign language interpreter, Ms. Esparza was not afforded the opportunity to communicate with defendants as to the contents of the seven-page medical document.

42. As a result of the actions of defendants set forth above, Ms. Esparza's rights were severely infringed upon and her right to self determination of her medical decisions had been severely impaired.

43. As a result of the lack of an interpreter, Ms. Esparza was not able to engage in a

meaningful dialogue with her doctors and dentist.

44. Upon information and belief, defendants have been aware of Ms. Esparza's obvious disability.

45. Defendants' staff failed to undertake any meaningful assessment of Ms. Esparza's communication needs and abilities.

46. As a result of defendants' failure to ensure effective communication with Ms. Esparza, she received services that were objectively substandard and that were inferior to those provided to patients who are hearing, and was subjected to discriminatory treatment because of her disability.

47. Defendants intentionally discriminated against Ms. Esparza with deliberate indifference to her rights and to her communication needs, causing Ms. Esparza to endure humiliation, fear, anxiety, and emotional distress.

48. Ms. Esparza will seek defendants' healthcare services in the future, whether by choice or necessity, due to the proximity of defendants' medical facilities to her home and her need for medical treatment; due to the ongoing discrimination she has encountered, Ms. Esparza expects that she will encounter discrimination by defendants again in the near future.

**AS TO DEFENDANT LSU ONLY:**

**CLAIM 1: VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

49. Ms. Esparza repeats and realleges all preceding paragraphs in support of this claim.

50. At all times relevant to this action, Title II of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to defendant LSU's conduct.

51. At all times relevant to this action, the United States Department of Justice regulations implementing Title II of the ADA, 28 C.F.R. Part 35, have been in full force and effect and have applied to the defendant LSU's conduct.

52. At all times relevant to this action, Ms. Esparza has been substantially limited in the major life activities of hearing, speaking, and reading, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

53. LSU is a public entity within the meaning of Title II of the ADA.

54. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

55. Federal regulations implementing Title II of the ADA provide that a "public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

56. Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).

57. Federal regulations implementing Title II of the ADA further provide that a public entity "shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a).

58. Defendant LSU discriminated against Ms. Esparza, on the basis of disability, in violation of Title II of the ADA and its implementing regulations.

59. Ms. Esparza is therefore entitled to monetary relief, injunctive relief, as well as an award

of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133.

**AS TO DEFENDANTS UMCMC and LCMC ONLY:**

### CLAIM 2: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

60. Ms. Esparza repeats and realleges all preceding paragraphs in support of this claim.

61. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to defendants' conduct.

62. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the defendants' conduct.

63. At all times relevant to this action, Ms. Esparza has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2). Defendants own, lease, and/or operate places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

64. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

65. Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

66. Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with

individuals with disabilities." 28 C.F.R. § 36.303(c).

67. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

68. Defendants discriminated against Ms. Esparza, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

69. As set forth above, absent injunctive relief there is a clear risk that defendants' actions will recur with Ms. Esparza.

70. Ms. Esparza is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

**CLAIM 3: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS**

71. Ms. Esparza repeats and realleges all preceding paragraphs in support of this claim.

72. At all times relevant to this action, the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2231 et. seq., has been in full force and effect and has applied to defendants' conduct.

73. At all times relevant to this action, Ms. Esparza has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Louisiana Commission on Human Rights, LA. REV. STAT. ANN. § 51:2232(3)(a).

74. At all times relevant to this action, defendants have been a place which is supported directly or indirectly by government funds and thus is a place of public accommodation, resort, or amusement pursuant LA. REV. STAT. ANN. § 51:2232(9).

75. The LCHR prohibits discriminatory practices and provides that "it is a discriminatory

practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

76. The LCHR extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 2264.

77. Defendants discriminated against Ms. Esparza, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247.

78. Ms. Esparza is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to LA. REV. STAT. ANN. § 51:2247.

79. Ms. Esparza is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2247.

**AS TO ALL DEFENDANTS:**

### CLAIM 4: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

80. Ms. Esparza repeats and realleges all preceding paragraphs in support of this claim.

81. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to defendants' conduct.

82. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to defendants' conduct.

83. At all times relevant to this action, Ms. Esparza has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9). At all times relevant to this action, defendants

received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, defendants' hospital is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

84. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

85. Pursuant to Federal regulations implementing Section 504 of the Rehabilitation Act, programs or activities receiving Federal financial assistance "must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

86. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

87. Defendants discriminated against Ms. Esparza, on the basis of disability, in violation of 29 U.S.C. § 794.

88. As set forth above, absent injunctive relief there is a clear risk that defendants' actions will recur against Ms. Esparza.

89. Ms. Esparza is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

90. Ms. Esparza is further entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

## CLAIM 5: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

91. Ms. Esparza repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

92. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the defendants' conduct.

93. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

94. At all times relevant to this action, Ms. Esparza had substantial limitations to the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

95. At all times relevant to this action, Ms. Esparza's primary language for communication was American Sign Language and not English; and Ms. Esparza had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

96. At all times relevant to this action, defendants received federal financial assistance, including Medicaid reimbursements, and were principally engaged in the business of providing health care. Therefore, defendant's hospital is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

97. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

98. Defendants have discriminated and continue to discriminate against Ms. Esparza solely on the basis of her disability and her limited English proficiency by denying her meaningful access to the services, programs, and benefits defendants offer to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

99. Defendants discriminated against Ms. Esparza by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through a properly working VRI machine.

100. On information and belief, the refusal to offer on-site ASL interpreter services is as a result of a policy or practice of defendants to prohibit or impede the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

101. As set out above, absent injunctive relief there is a clear risk that defendants' discriminatory actions will recur again against Ms. Esparza.

102. Ms. Esparza is therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

103. Ms. Esparza is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Ms. Esparza respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that defendant LSU's policies, procedures, and practices have subjected Ms. Esparza to unlawful discrimination in violation of Title II of the Americans with Disabilities Act;

    b.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the policies, procedures, and practices of defendants UMCMC and LCMC have subjected Ms. Esparza to unlawful discrimination in violation of Title III of the Americans with Disabilities Act;

    c.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the policies, procedures, and practices of all defendants have subjected Ms. Esparza to unlawful discrimination in violation of the Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights;

    d.    Issue an injunction forbidding defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of defendants' facilities, services or programs;

    e.    Issue an injunction ordering defendants:

      i.  to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Esparza or other deaf or hard of hearing individuals by failing to provide effective communication;

      ii.  to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by defendants;

      iii.  to develop, implement, promulgate, and comply with a policy to ensure that defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that defendants will provide sign language interpreters, videophones, and other

        communication services to ensure effective communication with deaf or hard of hearing persons;

   iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

   v. to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

   vi. to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, and the Louisiana Commission on Human Rights;

   vii. to train all their employees, staffs, and other agents on a regular basis about defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

f. Award to Ms. Esparza:

   i. Compensatory damages pursuant to the ADA, RA, ACA, and Louisiana Commission on Human Rights;

   ii. Nominal damages pursuant to the ADA, RA, ACA, and Louisiana Commission on Human Rights

   iii. Reasonable costs and attorneys' fees pursuant to the ADA, the RA, the ACA, and the Louisiana Commission on Human Rights;

iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Ms. Esparza demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: May 9, 2017

                    Respectfully Submitted,

                    **Bizer & DeReus**
                    Attorneys for Plaintiff
                    Andrew D. Bizer (LA # 30396)
                    andrew@bizerlaw.com
                    Garret S. DeReus (LA # 35105)
                    gdereus@bizerlaw.com
                    Marc P. Florman (LA # 35128)
                    mflorman@bizerlaw.com
                    3319 St. Claude Ave.
                    New Orleans, LA 70117
                    T: 504-619-9999; F: 504-948-9996

               By: /s/ Garret S. DeReus
                    Garret S. DeReus